IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DONNA L. CAMP | § | |
|     PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-00866-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Donna L. Camp ("Camp") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for widow's insurance benefits under Title

II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA").

Camp applied for widow's insurance benefits and SSI in April 2009, alleging disability

commencing February 20, 2009. (Tr. 12, 101-119, 137). Her applications were denied initially

and on reconsideration. (Tr. 13, 38-59.) The ALJ held a hearing on March 11, 2010 and issued a

decision on April 26, 2010 that Camp was not disabled because she was capable of performing

her past relevant work as a real estate office manager. (Tr. 13-33.) The Appeals Council denied

1

Camp's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-4.)

## II. STANDARD OF REVIEW

Disabled widow's insurance benefits are governed by Title II, 42 U.S.C. § 401 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disabled widow's insurance benefits); 20 C.F.R. Pt. 416 (SSI).[1] The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404. Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from

---

[1] To be eligible for disabled widow's insurance benefits, a claimant must establish, as relevant here, that: (1) she is not married; (2) she is between 50 and 60 years old; (3) her spouse died while fully insured; and (4) she has a physical or mental impairment or impairments that, under the regulations, are deemed to be so severe as to preclude her from engaging in any substantial gainful activity. 42 U.S.C. § 402(e); 20 C.F.R. § 404.335; *see, e.g.,* *Pickney v. Shalala*, No. 1:93-CV-325, 1995 WL 137047 at *2-3 (Mar. 23, 1995). To be eligible for SSI benefits, a claimant must be disabled and must have sufficiently limited income and resources. 42 U.S.C. §§ 1382(a), 1382c.

returning to his past relevant work. *Id.* §§ 404.1520(f), 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* §§ 404.1520(g), 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* But if the Commissioner meets this burden, it is up to the claimant to then show that he cannot perform the alternate work suggested. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if credible evidentiary choices or medical findings substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUE

Camp presents the following issues in her brief:

1. Whether the ALJ properly evaluated all of the medical opinion evidence within the record in determining Camp's residual functional capacity ("RFC");

2. Whether the ALJ considered all of Camp's functional limitations in determining her RFC; and

3. Whether the ALJ properly evaluated Camp's past relevant work in determining she could return to it.

## IV. ADMINISTRATIVE RECORD

In his April 26, 2010 decision, the ALJ found that Camp had not engaged in substantial gainful activity since February 20, 2009. (Tr. 14, 19.) The ALJ further concluded that Camp had the severe impairments of "degenerative joint disease in both knees and degenerative changes in the lumbar spine." (Tr. 19; *see* Tr. 14-15.) Next, the ALJ held that none of Camp's impairments or combination of impairments met or equaled the severity of any impairment in the listing. (Tr. 19.) As to Camp's residual functional capacity ("RFC"), the ALJ stated, "Claimant retains the exertional capacity for the sustained performance of a full range of sedentary work[2] activity. There are no other physical limitations or restrictions or work-related mental limitations." (Tr. 19 (footnote added); *see* Tr. 16-18.)

The ALJ opined, based on his RFC assessment, that Camp was able to perform her past relevant work. (Tr. 18-19.) Specifically, the ALJ, relying upon the testimony from Camp and the vocational expert ("VE"), determined that Camp could perform her past relevant work as a real estate office manager because it "did not require the performance of work activities precluded" by her limitations. (Tr. 19.) Consequently, the ALJ concluded that Camp was not disabled. (Tr. 19.)

---

[2] Sedentary work is defined as follows:

[I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §404.1567(a). To perform the full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

## V. DISCUSSION

Camp argues generally that the ALJ's RFC determination is not supported by substantial evidence.  Specifically, Camp claims that the ALJ: (1) failed to properly evaluate the medical opinion evidence; (2) failed to consider all of her functional limitations; and (3) failed to properly evaluate her past work and incorrectly determined that she could return to such work.[3] (Plaintiff's Brief ("Pl.'s Br.") at 1-2).

RFC is what an individual can still do despite his limitations.[4]  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.; See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  *Id.*   RFC is not the least an individual can do, but the most.  SSR 96-8p at *2.  The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered and is based upon all of the relevant evidence in the case record.  *Id.* at *3-5.  The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence.  *Id.* at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  *See* 20 C.F.R. §§

---

[3] The Court notes that Camp listed her arguments in this order but discussed them throughout the brief in a different order.  *See* Pl's Br. at 7-13.  To maintain organization and clarity, the Court will address the issues as they are listed above, which is how they were originally presented in the issue section.

[4] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.

404.1529, 416.929; Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.,* SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), superseded by SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

## A. <u>Medical Opinion Evidence</u>

Camp argues, in essence, that the ALJ failed to apply all of the factors listed in 20 C.F.R. § 404.1527 before rejecting the medical opinion of David Boucher, M.D. ("Dr. Boucher"), Camp's treating physician. (Pl.'s Br. at 11-13.) The regulations, rulings, and relevant case law reflect that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made. *See generally* 20 C.F.R. § 404.1527(b), (d); *see also* SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. §§ 404.1527(b), (d)(1), 416.927(b), (d)(1). Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and

conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis of 20 C.F.R. § 404.1527, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also* 20 C.F.R. § 416.927(c); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[5]

In this case, the ALJ determined that Camp had the RFC to perform the full range of sedentary work with no physical or mental restrictions. (Tr. 19.) In making such a

---

[5] As noted above, pursuant to *Newton*, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in Newton is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

determination, the ALJ went through the medical evidence in the record, including the following: (1) a June 24, 2009 Medical Release/Physician's Statement ("Medical Statement") by Dr. Boucher in which he opined that Camp was disabled and could not perform a full range of sedentary work duties (Tr. 194-95); (2) an August 13, 2009 consultative exam in which S.R. Boya, M.D. ("Dr. Boya"), opined that Camp could lift, carry, and handle objects weighing about 20 pounds, could "stand at a stretch for only 5 minutes," had full active and passive range of motion of all joints, could "carry out heel walking" but not "toe walking," could not squat, and could walk without an assistive device (Tr. 176; *see* Tr. 173-76); and (3) an August 22, 2009 Physical Residual Functional Capacity Assessment ("PRFC")[6] in which State Agency Medical Consultant ("SAMC") Roberta Herman, M.D. ("SAMC Herman"), "suggested that [Camp] had the exertional capacity for only a full range of only relatively less strenuous light exertion work activities"[7] (Tr. 17; *see* Tr. 179-86).

    In analyzing this medical evidence, the ALJ stated:

> I am aware that, on June 24, 2009, Dr. Boucher completed a physician's statement for food stamp purposes and opined that his patient was disabled and could not perform a full range of even sedentary work duties. However, I am not bound to accept even a treating physician's conclusion as to functional capacity or disability, particularly when the opinion is not supported by detailed, clinical diagnostic evidence. There is no indication that Dr. Boucher, an internist, not an orthopedic surgeon, the appropriate specialty, is aware of the entire body of

---

[6] This PRFC was confirmed by SAMC Moira Dolan, M.D., on September 28, 2009. (Tr. 187.)

[7]Light work is defined as follows:

Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [plaintiff] must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b) (2003). Dictionary of Occupational Titles defines frequent as "activity or condition [which] exists from 1/3 to 2/3 of the time." Dictionary of Occupational Titles, Vol. II, App. C, § IV (1991).

medical evidence in this case and this boilerplate form was not prepared for legitimate medical purposes of diagnosis or treatment. The physician had not examined claimant for approximately four years[8] before she contacted him June 23rd for the express purpose of "application on social security disability" and the exam notes are not comprehensive or lengthy.

The physician listed the subjective complaints and observed degenerative changes and decreased ranges of motion in her knees and spine, with effusions in both knees, but he did not make any other orthopedic, neuromuscular, sensory or reflex observations or review diagnostic tests. The actual limitations listed on the form, e.g., sitting two hours per workday with no walking and lifting no more than five pounds, are in excess of claimant's subjective complaints and all these factors detract from the overall value of the statement.

In the absence of post-onset exams, Dr. Boya conducted the August 13, 2009 consultative exam to assess claimant's current state of health and any possible work-related limitations. After reviewing the history and subjective complaints, the physician noted there were no allegations or [sic] indications of abdominal, endocrine, special sense, cardiovascular or respiratory impairments and he then noted crepitus and tenderness in both knees. Claimant walked without an assistive device; there were no other joint abnormalities and she had full active and passive range of motion in all joints; she walled [sic] on her heels, but not toes; she bent to 90°, but she could not squat; and she had full grip strength with no upper extremity limitations. The radiologist described the right knee degenerative changes as moderately advanced and the examining physician concluded claimant could lift/carry objects up to twenty pounds but not stand for more than five minutes at a stretch.

I considered the non-binding severity and functional capacity proposals, with brief, explanatory rationales, issued by the DDS physicians reviewing this claim at the lower administrative levels pursuant to 20 CFR 404.1527 & 416.927 and SSR 96-6p. . . .

. . . .

Based on my independent review on all the evidence before me, I find that the DDS proposals are not entirely supported by the evidence especially as they address the time claimant can be on her feet during an eight-hour workday. Claimant is overweight (at 5'5" and 178#, her body mass index is approximately 28) and, in consideration of combined adverse effects of all the impairments, I have concluded that she has the exertional capacity for the sustained performance of a full range of sedentary work duties, the least strenuous of the several work activity levels.

---

[8] Dr. Boucher conducted the actual examination with Camp on June 23, 2009. (Tr. 196.) The last two times Boucher had previously seen Camp were on April 6, 2007 and March 11, 2005. (Tr. 205-14.)

(Tr. 16-17 (internal citations and footnotes omitted) (footnote added).)

After reviewing the ALJ's decision, the Court concludes that the ALJ did properly evaluate Dr. Boucher's opinion using the factors set forth in 20 C.F.R. § 404.1527(c). *See also* 20 C.F.R. § 416.927(c). As to factors one and two under which the ALJ evaluates the examining and treatment relationship between Camp and Dr. Boucher, the ALJ recognized that Dr. Boucher was Camp's treating physician and noted that Dr. Boucher had not examined for "approximately four years." (Tr. 16.) *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In support of this statement, the ALJ cites to Exhibit 2e, an undated "Disability Report – Adult" form in which **Camp herself** states that it had been four years since the date of her last visit with Dr. Boucher. (Tr. 16; *see* Tr. 140; 136-43.) However, a review of the other medical records shows that, prior to June 23, 2009, Dr. Boucher last saw Camp on April 6, 2007. (Tr. 214.) Regardless of whether the time between examinations had been two years or four years, such a gap is significant and Camp has not shown that it was error for the ALJ to partially rely on this fact to discount Dr. Boucher's June 24, 2009 Medical Statement. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (stating that, to be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected.").

As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of physician's opinion as well as any other factors which "tend to support or contradict the opinion," the ALJ also noted: (1) the inconsistencies in Dr. Boucher's opinions with other medical evidence in the record, (2) that Dr. Boucher did not "make any other

orthopedic, neuromuscular, sensory or reflex observations or review diagnostic tests" in coming to his conclusions and his exam notes were not comprehensive or lengthy, (3) that Dr. Boucher's opinions were in excess of claimant's own subjective complaints; and (4) that the sole purpose for Dr. Boucher's June 23, 2009 exam was to support Camp's application for social security disability and was not prepared for "legitimate medical purposes of diagnosis or treatment." (Tr. 16; *see* 20 C.F.R. § 404.1527(c)(3)–(4), (6).)   As to factor five under which more weight is generally given to the opinion of a specialist, the ALJ noted that Dr. Boucher was an internist and not an orthopedic surgeon.  (Tr. 16; *see* 20 C.F.R. § 404.1527(c)(5).)   Because the ALJ ultimately determined, based on substantial medical evidence and other evidence in the record, that Dr. Boucher's opinions should be rejected and provided good cause for rejecting Dr. Boucher's opinions, remand is not required.

Camp further contends that the ALJ erred in rejecting Dr. Boucher's opinion because "there is no medical opinion evidence from any other treating or examining source which contradicts Dr. Boucher's opinions regarding Ms. Camp's ability to perform work-related activities." (Pl.'s Br. at 13.) As to this claim, Camp argues that the ALJ specifically rejected the findings of the SAMC as to Camp's RFC.  Furthermore, Camp asserts that only Dr. Boucher offered an opinion on Camp's ability to perform work-related activities and that Dr. Boya, the only other doctor that actually examined Camp, "did not offer an opinion as to the Plaintiff's ability to perform work-related activities." (*Id.*; Plaintiff's Reply ("Pl.'s Reply") at 2.)  Plaintiff claims that there "cannot be a contradiction between the opinions of a treating doctor and another physician's silence." *Id.*  The essence of Camp's argument is that because the ALJ rejected the opinion of the SAMC and Dr. Boya did not address Camp's ability to work, the ALJ was only

left with Dr. Boucher's opinion that Camp was disabled and it was, thus, error for the ALJ to reject such opinion. (Pl.'s Br. at 12-13; Pl.'s Reply at 2-3.)

In her August 13, 2009 examination, Dr. Boya stated:

[Camp] can lift, carry and handle objects weighing about 20 pounds.  She can hear and speak.  She can stand at a stretch for only 5 minutes.  She doesn't use any assistive devices such as cane, crutch or walker.  No evidence of any joint deformities, bone or tissue destruction.  She did have crepitus in both knees and they were somewhat tender. No heat, redness, effusion or atrophy noted.  Both active and passive range of motion of all joints was normal.  She was able to carry out heel walking.  She couldn't carry out toe walking.  She was able to bend 90 degrees.  She could not squat.  Her grip strength was normal.  She had the ability to reach, handle, finger and feel.  Her arterial pulsation in the lower extremities was normal.  Her general health appeared to be normal.  No shortness of breath noted.  She wasn't complaining of any fatigue.

(Tr. 176.)   In his June 24, 2009 statement, Dr. Boucher concluded that Camp could do the following during a workday: (1) sit for a maximum of four hours; (2) stand for a maximum of two hours; (3) keyboard for a maximum of four hours; (4) walk, climb stairs/ladders, kneel/squat, bend/stoop, push/pull and lift/carry for less than thirty minutes; and (5) lift or carry objects more than five pounds for more than thirty minutes per day.  (Tr. 194.)  Furthermore, Boucher noted that Camp had a non-permanent disability that was expected to last more than six months but could still "complete community work in an office environment" or classroom setting "with little physical strain or demand." *Id.*

Contrary to Camp's arguments, it is clear that the ALJ not only considered, but ascribed a weight to all of the medical opinions in the record as required by the regulations.  Furthermore, although the ALJ rejected the opinion of Dr. Boucher that Camp was disabled and could not perform the full range of sedentary work duties, the ALJ did not completely reject the entire opinion of the SAMC.  Instead, the ALJ rejected, in essence, only that portion of SAMC Herman's opinion that Camp could stand and/or walk for about six hours in an 8-hour workday. (Tr. 17; *see* Tr. 180.)  In addition, the opinion of Dr. Boya supports the ALJ's RFC determination

that Camp could perform the full range of sedentary work. It is disingenuous for Camp to argue that Dr. Boya's opinion did not relate to Camp's ability to perform work-related activities as Dr. Boya's examination was performed at the request of Disability Determination Division of the Texas Rehabilitation Commission. (*See* Tr. 172-76.) Furthermore, Dr. Boya's opinion that Camp could, *inter alia*, lift, carry, and handle objects weighing 20 pounds and carry out heel walking support the ALJ's finding that Camp had the RFC to perform sedentary work. Because substantial evidence supports the ALJ's assessment of Camp's RFC and the assessment has not been shown to be a product of legal error, remand is not required on this issue.

### B. Functional Limitations

Camp also argues that the ALJ failed to consider all of her functional limitations in determining that she had the RFC to perform the full range of sedentary work. Specifically, Camp argues that there is no evidence that Camp can remain seated, has the ability to bend and stoop, or can concentrate (due to serious problems with disturbed sleep) as required to perform the full range of sedentary work.

As noted above, sedentary work is defined as follows:

> [I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §404.1567(a). To perform the full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday and must be able to perform substantially all of the exertional and non-exertional functions required in work at that level. SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). In resolving inconsistencies in

the RFC, "[t]he ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

### 1. Ability to Remain Seated

Camp claims that the ALJ erred in finding that she had the ability to perform sedentary work when she testified that her knees hurt when sitting and when there was medical evidence in the record that she could only sit a maximum of four hours in a workday. (Pl.'s Br. at 10.)  In this case, there are differing medical opinions in the record regarding how long Camp can remain seated. Specifically, a conflict exists between SAMC Herman's determination in the PRFC that Camp could sit, with normal breaks, for a total of about six hours in an eight-hour workday (Tr. 180) and Dr. Boucher's determination that Camp could sit for a maximum of only four hours during a workday (Tr. 194).[9]  Although the ALJ did not rely on SAMC Herman's proposal as to how long Camp could stand, the ALJ does appear to rely on the rest of SAMC Herman's opinions, as well as Dr. Boya's opinions, in determining Camp could perform the full range of sedentary work.   The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)).  Because there is substantial evidence supporting the ALJ's determination regarding Camp's ability to remain seated, remand is not required.

---

[9] As to opinions of the SAMC, the ALJ stated, "Based on my independent review on all the evidence before me, I find that the DDS proposals are not entirely supported by the evidence especially as they address the time claimant can be on her feet during an eight-hour workday." (Tr. 17.)

### 2.  Ability to Bend and Stoop

Camp further alleges that the ALJ failed to consider Camp's allegedly limited ability to bend and stoop. (Pl.'s Br. at 10).  Dr. Boucher specifically opined in the June 24, 2009 statement that Camp could bend and stoop for less than thirty minutes during a workday.  (Tr. 194.) However, as discussed above, the ALJ rejected Dr. Boucher's opinions in such statement and did not rely on them in determining Camp's RFC.  Instead, the ALJ relied on other medical opinion evidence in the record in formulating Camp's RFC.  Because substantial evidence supports the ALJ's RFC determination, remand is not required.

### 3.  Difficulties with Concentration

Finally, Camp argues that the ALJ failed to evaluate Camp's alleged difficulties with concentration, which potentially arose from Camp's disturbed sleep, in determining that Camp could perform the full range of sedentary work. (Pl.'s Br. at 10-11.)  Camp claims that the following evidence in the record shows that she had difficulties with concentration: (1) her own testimony (*See, e.g.*, Tr. 27) and (2) an April 20, 2009 "Disability Report—Field Office" form in which interviewer "D. Johnson" noted that Camp was forgetful at times and "[s]eemed to have a little difficulty concentrating" (Tr. 134).

However, proof of a severe medical impairment must be corroborated, at least in part, by objective medical evidence.  *See, e.g., Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (claimant's allegations could not be corroborated where no physician ever stated that the claimant experienced symptoms that would preclude work).  In this case, Camp fails to point to any medical evidence supporting Camp's claims that she suffered from difficulties with concentration.  In fact, the objective medical evidence in the record indicates that Camp did not have any sleep issues that might affect her concentration.  For instance, in the August 13, 2009

15

consultative examination, Dr. Boya concluded that Camp had "[n]o depression, anxiety, suicidal/homicidal ideation or insomnia." (Tr. 174.) Because there is a complete lack of medical opinion evidence to support Camp's alleged concentration issues and substantial evidence supports the ALJ's RFC determination, remand is not required.

## C. Past Relevant Work

Camp also argues, in essence, that the ALJ erred in finding, at Step Four, that she could return to her past relevant work as a real estate office manager because there is no evidence that Plaintiff performed such work in the past. (Pl.'s Br. at 7-9.) Camp further claims that, even assuming *"arguendo* that the Plaintiff worked as a real estate office manager, the Commissioner has not provided any evidence to establish that such work was performed at the substantial gainful activity level." (Pl.'s Reply Br. at 2.) Specifically, Plaintiff states:

> The Commissioner has not determined the amount of Plaintiff's net earnings from self-employment which may be attributed to such work as a real estate office manager (see 20 CFR 404.1065), nor has the Commissioner determined whether the Plaintiff has rendered services which are significant to the management of a real estate office for which the Plaintiff received a substantial income (see 20 CFR 404.1575(a)(2)(i)).

(*Id.*)

For a claimant to be found not disabled at Step Four, she must be able to perform past relevant work.   20 C.F.R. §§ 404.1520(f), 416.920(f).   Past relevant work is defined as "substantial gainful activity" that a claimant has done within the past fifteen years and that lasted long enough for the claimant "to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1); *see* 20 C.F.R. §§ 404.1565, 404.1571, 416.965, 416.971.   Substantial gainful activity is defined as follows:

> (a) Substantial work activity.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work must be substantial even if

it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. §§ 404.1572, 416.972; *see also* 20 C.F.R. §§ 404.1574, 416.974. Generally, the primary consideration in determining whether work was substantial gainful activity is earnings. *White v. Heckler*, 740 F.2d 390, 394 (5th Cir. 1984). If a claimant is paid a certain threshold amount of monthly earnings, as calculated by a formula set by the Commissioner, the job is presumed to constitute "substantial gainful activity." 20 C.F.R. §§ 404.1574(a)(1), (b)(2), 416.974(a)(1), (b)(2). If the amount of monthly earnings falls below this threshold, the job is presumed not to be "substantial gainful activity." *Id.* § 404.1574(b)(3)(i). *See Substantial Gainful Activity*, ssa.gov, http://www.ssa.gov/OACT/COLA/sga.html, attached hereto as Exhibit A. For self-employed claimants, there are separate guidelines used to determine whether such claimant is engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1575, 416.975.

"[W]hen making a finding that an applicant can return to his prior work, the ALJ must directly compare the applicant's remaining functional capacities with the physical and mental demands of his previous work." *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994); 20 C.F.R. §§ 404.1520(f), 416.920(f). "The ALJ may not rely on generic classifications of previous jobs" in analyzing the demands of an applicant's previous work compared to his current RFC. *Latham*, 36 F.3d at 484. The ALJ may find a claimant capable of performing his past relevant work if he is capable of performing such work as it is generally performed in the national economy, even though he cannot currently perform certain requirements of specific past jobs. *See Leggett*, 67 F.3d at 564; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). "ALJs may take notice of job data in the *Dictionary of Occupational Titles* ("DOT"), which reflects the exertional

requirements of a job as performed in the national economy." *Id.*; *see* 20 C.F.R. § 404.1566(d)(1).[10]   In addition, the ALJ may rely upon the VE's testimony in making a determination at Step Four so long as the record reflects an adequate basis for doing so. *Leggett*, 67 F.3d at 565; *Greenspan v.* Shalala, 38 F.3d 232, 239 (5th Cir. 1994) (affirming determination, based in part on testimony of vocational expert, that claimant was able to perform past relevant work).

In this case, the ALJ determined that Camp was not disabled at Step Four because she had the ability to perform her past relevant work as a real estate office manager. (Tr. 18-19.)  In making this determination, the ALJ relied on the testimony of Carol Bennett, the vocational expert ("VE"), that Camp had been a real estate agent and a supervisor of a real estate office and that supervising a real estate office was classified as a skilled, sedentary job.  (Tr. 32.)  In addition, the record contains other evidence supporting the ALJ's determination that Camp had past relevant work as a real estate office manager, including: (1) Camp's own testimony at the hearing that, in the past, "she had a real estate office" and that she "had realtors working for me" (Tr. 24); and (2) Camp's assertion in an undated "Disability Report—Adult" form that she worked in real estate from 1993 to 2009 and supervised eleven people, including the hiring and firing, for a couple of hours per day (Tr. 139).  Furthermore, there is evidence that Camp closed

---

[10] The DOT defines a Manager, Real-Estate Firm as:

> Directs and coordinates activities of sales staff for real estate firm: Screens and hires sales agents.  Conducts training sessions to present and discuss sales techniques, ethics, and methods of maintaining sales quotas.  Accompanies sales agents and clients to observe sales methods utilized, and counsels agents regarding matters, such as professionalism, financing, and sales closings.  Confers with agents and clients to resolve problems, such as adjusting sales price, repairing property, or accepting closing costs.  Sells or rents property for clients.  Manages residential and commercial properties for clients.  May own real estate firm or be employed by nationwide franchise.  May confer with legal authority to determine if transactions are handled in accordance with state laws and with regulations governing real estate industry.  May assist in negotiating development contracts with land developers, contractors, and architects.  May review closing statements and attend closing transactions to represent real estate establishment.

DOT § 186.167-066 (Rev. 4th ed. 1991) (internal citations omitted).

her real estate office, not because of her impairment, but because the other realtors that worked

for her had taken other jobs. (Tr. 24.)[11]

Based on the above, the Court concludes that there is substantial evidence in the record

that Camp did perform past work as a real estate office manager. Thus, the issue becomes

whether such work could be found to be substantial gainful activity.[12] In this case, the ALJ made

absolutely no non-conclusory findings[13] on the issue of whether Camp's work as a real estate

office manager would qualify as substantial gainful activity under 20 C.F.R. §§ 404.1574(b)(3)

or 416.974(b)(3),[14] which requires certain levels of earnings for work to be considered a

---

[11] Camp testified at the hearing that she closed her office in January 2009 but that she still tried to do some things out of her house. (Tr. 24-26.) She stated that she closed the office "for business reasons" because she had "no income coming in." (Tr. 26.) She also testified that she had not been able to "get out and walk and show property in about three or four years," but that her "other realtors worked." (Tr. 26.)

[12] The Court notes that the Commissioner argues that, pursuant to *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000), Camp should not be allowed to argue this issue because "Plaintiff's counsel did not, at the time of the hearing, challenge the VE's testimony regarding Camp's past relevant work." (Def.'s Response at 6.) The Court finds the Commissioner's reliance on *Carey* misplaced because it dealt with "situations in which there is an implied or indirect conflict between the VE's testimony and the DOT," which is not an issue in this case. *Homer v. Astrue*, No. 4:10-CV-081-Y, 2011 WL 824690, at *8 (N.D. Tex. Feb. 17, 2011).

[13] The ALJ, in a footnote, states:

> The regulations define past relevant work as those jobs claimant has performed at the substantial gainful activity level for a sufficient period to master the essential duties of the job and that the work activity occurred within fifteen years of the date of adjudication. 20 CFR [§] 404.1565 & 416.965 and SSRs 82-61 & 82-62.

(Tr. 18.) However, the ALJ failed to discuss what constitutes substantial gainful activity and how Camp's employment as a real estate office manager qualified as substantial gainful activity pursuant to the regulations. Furthermore, there is no evidence in the record that supports such a conclusion.

[14] Camp appears to have been self-employed as a real estate office manager so the applicable regulation for determining what such work constitutes substantial gainful activity would be 20 C.F.R. §§ 404.1575, 416.975. However, even assuming that 20 C.F.R. §§ 404.1574(b)(3) and 416.974(b)(3) are applicable in this case, a review of the evidence in the record indicates that Camp only earned more than the required level of earnings in 2006. In 2006, when the minimum monthly substantial gainful activity amount was $1450, Camp reported earnings of $42,915.20 for the year, which equates to $3576 per month. (Tr. 120-22.) *See* 20 C.F.R. §§ 404.1574(b)(3)(i), 416.974(b)(3)(i). *See Substantial Gainful Activity*, ssa.gov, http://www.ssa.gov/OACT/COLA/sga.html (attached hereto as Exhibit A). However, there is no indication of what percentage of this salary was derived from Camp's work as a real estate agent and what percentage was derived from Camp's work as a real estate office manager. Furthermore, in the undated "Disability Report—Adult" form discussed above, Camp indicated that she had worked in real estate from 1993 to 2009 and earned $1500.00/month. $1500 a month exceeds the minimum monthly substantial gainful activity amount for the years from 1993 to 2006 but it does not meet the minimum monthly requirement for 2007 to 2009. 20 C.F.R. §§ 404.1574(b)(3)(i), 416.974(b)(3)(i). *See Social Security Online*,

substantial gainful activity, or 20 C.F.R. §§ 404.1575 or 416.975, which establishes evaluation guides for determining substantial gainful activity for self-employed claimants. Because substantial evidence does not support the ALJ's determination that Camp's past work as a real estate office manager constituted substantial gainful activity and, thus, could be considered past relevant work, remand is required on this issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusion accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

---

*Substantial Gainful Activity, supra.* Moreover, once again, there is no evidence of how much of this income was derived from Camp's work as a real estate office manager as opposed to her activities as a real estate agent.

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **December 26, 2012** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 12, 2012.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

# Social Security
The Official Website of the U.S. Social Security Administration

## Substantial Gainful Activity

Automatic Determinations

Determinations:
 SGA for blind
 SGA for non-blind disabled

Wage-indexed amounts

To be eligible for disability benefits, a person must be unable to engage in substantial gainful activity (SGA). A person who is earning more than a certain monthly amount (net of impairment-related work expenses) is ordinarily considered to be engaging in SGA. The amount of monthly earnings considered as SGA depends on the nature of a person's disability. The Social Security Act specifies a higher SGA amount for statutorily blind individuals; Federal regulations specify a lower SGA amount for non-blind individuals. Both SGA amounts generally change with changes in the national average wage index.

### Amounts for 2013
The monthly SGA amount for statutorily blind individuals for 2013 is $1740. For non-blind individuals, the monthly SGA amount for 2013 is $1040. SGA for the blind does *not* apply to Supplemental Security Income (SSI) benefits, while SGA for the non-blind disabled applies to Social Security and SSI benefits. See historical series of SGA amounts below.

### Trial work period
After a person becomes eligible for disability benefits, the person may attempt to return to the work force. As an incentive, we provide a *trial work period* in which a beneficiary may have earnings and still collect benefits.

### Monthly substantial gainful activity amounts by disability type

| Year | Blind | Non-blind | Year | Blind | Non-blind | Year | Blind | Non-blind |
|------|-------|-----------|------|-------|-----------|------|-------|-----------|
| 1975 | $200 | $200 | 1990 | $780 | $500 | 2005 | $1,380 | $830 |
| 1976 | 230 | 230 | 1991 | 810 | 500 | 2006 | 1,450 | 860 |
| 1977 | 240 | 240 | 1992 | 850 | 500 | 2007 | 1,500 | 900 |
| 1978 | 334 | 260 | 1993 | 880 | 500 | 2008 | 1,570 | 940 |
| 1979 | 375 | 280 | 1994 | 930 | 500 | 2009 | 1,640 | 980 |
| 1980 | 417 | 300 | 1995 | 940 | 500 | 2010 | 1,640 | 1,000 |
| 1981 | 459 | 300 | 1996 | 960 | 500 | 2011 | 1,640 | 1,000 |
| 1982 | 500 | 300 | 1997 | 1,000 | 500 | 2012 | 1,690 | 1,010 |

Exhibit A (pg. 1 of 2)

| 1983 | 550 | 300 | 1998 | 1,050 | 500 | 2013 | 1,740 | 1,040 |
|------|-----|-----|------|-------|------|------|-------|-------|
| 1984 | 580 | 300 | 1999 | 1,110 | 700* |      |       |       |
| 1985 | 610 | 300 | 2000 | 1,170 | 700  |      |       |       |
| 1986 | 650 | 300 | 2001 | 1,240 | 740  |      |       |       |
| 1987 | 680 | 300 | 2002 | 1,300 | 780  |      |       |       |
| 1988 | 700 | 300 | 2003 | 1,330 | 800  |      |       |       |
| 1989 | 740 | 300 | 2004 | 1,350 | 810  |      |       |       |

* $500 amount applied in the first half of 1999.

*Last reviewed or modified 10/16/2012*

Exhibit A (pg. 2 of 2)